UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GERMIRA CARTER,

        Petitioner,

                                                    Case Number 07-12211-BC

v.                                            Honorable Thomas L. Ludington

SHIRLEE A HARRY,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Germira Carter, who is presently confined at the Pine River Correctional Facility in St. Louis, Michigan, filed a pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Petitioner was convicted by a jury in the Macomb County Circuit Court of kidnapping, Mich. Comp. Laws § 750.349; armed robbery, Mich. Comp. Laws § 750.529; carjacking, Mich. Comp. Laws § 750.529a; third-degree fleeing and eluding a police officer, Mich. Comp. Laws § 257.602a(3a); and five counts of possession of a firearm in the commission of a felony [felony-firearm], Mich. Comp. Laws § 750.227b.[2] Petitioner was sentenced to concurrent terms of 285 to

---

[1] Petitioner was incarcerated at the Saginaw Correctional Facility when he originally filed his habeas petition; however, he has since been transferred to the Pine River Correctional Facility. The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated. Rule 2(a) of the Rule Governing § 2254 Cases; *see also Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006). In most cases where a petitioner is transferred to a different facility after the petition has been filed, the case caption would be amended. However, there is no reason to do so here because the petition will be denied.

[2] Petitioner was acquitted of two counts of assault with intent to commit murder, one count of assault with a dangerous weapon, one count of first-degree home invasion, and several additional felony-firearm counts.

600 months of imprisonment on the kidnapping, armed robbery and carjacking convictions, 3 to 5 years of imprisonment on the fleeing and eluding conviction, and 2 years of imprisonment on the felony-firearm conviction.

On May 27, 2005, Petitioner, through counsel, filed a delayed application for leave to appeal his convictions to the Michigan Court of Appeals. The Michigan Court of Appeals denied Petitioner leave to appeal "for lack of merit in the grounds presented," as did the Michigan Supreme Court because it was "not persuaded that the question presented should be reviewed." *People v. Carter*, No. 262998 (Mich. Ct. App. Nov. 4, 2005), leave denied, 721 N.W.2d 589 (table) (Mich. 2006). Now, in his habeas petition before this Court, Petitioner alleges that the prosecutor's discovery violations deprived him of his constitutional rights to counsel and due process. In an answer, Respondent contends that Petitioner's claims lack merit. For the reasons stated below, the petition will be denied.

I

At trial, the prosecutor's theory of the case was that on June 17, 2003, Petitioner and his co-defendant, Randy Morris, broke into April Bonner's home in St. Clair Shores, committed armed robbery, and used duct tape to kidnap April's three-year-old son for ransom money. April was the first winner of the Michigan Millions lottery. April's husband, James Bonner, was outside the home when their son was kidnapped and was chased on foot by Morris.

James Bonner testified that Petitioner stole April's Cadillac Escalade with the Bonners' son in the car. Various police officers testified that they subsequently located Petitioner while he was driving April's vehicle. Petitioner led the police on a high speed chase, during which he shot at pursuing police officers. After crashing April's vehicle, Petitioner attempted to flee, was shot by

police, and was eventually arrested. While still in the hospital bed, Petitioner confessed to Detective Sergeant Bowlin his involvement in the kidnapping scheme, which had been engineered by one of April's cousins, co-defendant Morris.[3]

At trial, defense counsel argued in his opening and closing statements that Petitioner was only guilty of fleeing and eluding, and not the other offenses. Trial Tr. 29-37, Jan. 16, 2004; Trial Tr. 140-84, Jan. 22, 2004. Petitioner testified on his own behalf and denied that he intended to commit robbery, carjacking, or kidnapping. Petitioner testified that he visited the Bonners' home that morning to pay money that he owed James for a drug transaction. Petitioner testified that James assaulted him with a handgun, which caused him to jump into and drive off in April's vehicle. Petitioner claimed that he did not know that the Bonners' son was in the vehicle. Petitioner also denied shooting at the police. Petitioner denied any knowledge of a gun found in the vehicle by the police.

II

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (AEDPA). This Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). The AEDPA applies to all habeas petitions filed after the effective date of the Act, April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Petitioner's application was filed after that date, and therefore, the provisions of the AEDPA, including the amended standard of review, apply to this case.

---

[3] In a separate trial, Morris was convicted of kidnapping, conspiracy to kidnap, felonious assault, and felony-firearm. Morris' habeas petition is currently pending before another judge in this district. *See Morris v. Curtin*, No. 08-11348 (E.D. Mich. filed Mar. 31, 2008) (Zatkoff, J.).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

When, as here, a state court did not adjudicate a habeas petitioner's claim on the merits, federal habeas review is not subject to the deferential standard contained in § 2254(d). Rather, a federal court is required to review the claim *de novo*. *See Cone v. Bell*, - - - U.S. - - -, 129 S. Ct. 1769, 1784 (2009); *McKenzie v. Smith*, 326 F.3d 721, 726 (6th Cir. 2003). This is because "there are simply no results, let alone reasoning, to which this court can defer. Without such results or reasoning, any attempt to determine whether the state court decision 'was contrary to, or involved an unreasonable application of clearly established Federal law,' 28 U.S.C. § 2254(d)(1), would be futile." *McKenzie*, 326 F.3d at 727.

Petitioner contends that he was denied his constitutional rights to due process and effective assistance of counsel because the prosecution did not disclose certain pieces of information to his defense counsel prior to trial. Petitioner claims that the untimely disclosure of this information hindered his counsel's ability to adequately defend him at trial. Specifically, Petitioner contends that the prosecutor committed the following seven discovery violations:

>    1. Failure to disclose the identity of a woman named Susan Eatman, who handed James Bonner a cell phone to call the police. *See* Trial Tr. 6-8, Jan. 20, 2004.

2. Failure to produce Susan Eatman's statements to the police. *See id.*

3. Failure to produce the 911 tape of James Bonner's call to the police. *See* Trial Tr. 25, Jan. 21, 2004.

4. Failure to disclose on the prosecution witness list the name of Deputy Moleski, an officer who collected evidence from the crime scene. *See id.* 96.

5. Failure to disclose the name of Deputy Rue, who was present in Petitioner's hospital room when Petitioner made inculpatory remarks to Detective Sergeant Bowlin and who was in the courtroom during trial. *See id.* 93-98.

6. Failure to disclose information that the police had been searching for a suspect who left the scene on a bicycle and failure to collect evidence of the clothing found near the scene that matched the general description of that suspect. *See id.* 130-36.

7. Failure to produce multiple police reports. *See* Trial Tr. 130-36, Jan. 20, 2004.

Trial counsel mentioned some of the above alleged discovery violations in support of his three motions for mistrial, including the prosecution's alleged failure to disclose the name of Susan Eatman and failure to disclose the 911 tape of James Bonner's call to the police, Trial Tr. 5, 8, 9, 12, Jan. 21, 2004; the alleged failure to list as witnesses Deputies Moleski and Rue, *id.* 96, 104; and the failure to disclose the investigation of a bicycle and dark clothing in the area of the crime, *id.* 137-39. The trial court denied Petitioner's first and third motions for a mistrial because Petitioner failed to establish prejudice to his defense. *Id.* 19, 25, 140. The trial court denied Petitioner's second motion for a mistrial but decided that Deputy Rue should leave the courtroom, because he could potentially be called as a witness. *Id.* 105, 108-110.

Although the trial court refused to grant a mistrial, the trial court decided that the prosecution could not call Susan Eatman as a witness because she was not included on the prosecution's witness list. Trial Tr. 8-9, Jan. 20, 2004. With respect to Susan Eatman's written statement to the police, the prosecutor offered to provide a copy of the one-page report of her statement to defense counsel

and the trial court granted defense counsel's request to "peruse" the statement, *id.* 6, 9; and to speak to Susan Eatman. Trial Tr. 19, Jan. 21, 2004. Ultimately, defense counsel did not call Susan Eatman as a witness or use her statement to impeach James Bonner's credibility.

With respect to the 911 tape of James Bonner's cell phone call, the trial court judge refused to allow the prosecutor to play the tape for the jury, but did allow defense counsel the opportunity to hear the tape. *Id.* 26-27. Defense counsel conceded that the tape would not have been exculpatory: "This woman [and] this 911 tape are highly corroborative with what Mr. Bonner has said. Extremely." *Id.* 20.

Deputy Moleski was later identified by the prosecutor as an evidence technician who picked up a second roll of duct tape at the scene and gave it to Officer Goode. Deputy Moleski was not included on the prosecutor's witness list. The prosecutor informed the court that he did not intend to call Deputy Moleski because no positive prints were found on that roll of tape. *Id.* 102-03. Officer Goode testified that he personally secured and labeled one roll of duct tape at the scene as evidence. *Id.* 84, 90. Officer Goode testified that he received a second roll of duct tape found at another residence in the area of the foot chase from Deputy Moleski. *Id.* 90. Although the trial court admitted the first roll of duct tape, the trial court denied admission of the second roll of tape recovered from Deputy Moleski, on the basis that no chain of custody had been established. *Id.* 91, 96. The defense did not call Deputy Moleski to elicit any exculpatory testimony regarding the lack of fingerprints on the second roll of duct tape.

Deputy Rue was in the hospital room when the defendant made a confession to Sergeant Bowlin. Although Deputy Rue's name was listed on the police report provided to defense counsel, the prosecution did not intend to call Deputy Rue, and thus did not list him on its witness list. *Id.*

93-95. Deputy Rue did not participate in any interrogations. Petitioner made no offer of proof either at trial or in his post-trial motion for a new trial that Deputy Rue heard or saw anything that would have led the trial court to suppress any of his confessions or that the deputy might have given any other exculpatory testimony.

With respect to the information that the police had been looking for a suspect fleeing on a bicycle and that the police had found clothing, it was revealed during the cross-examination of Officer Goode that Officer Scott Chylinski of the Macomb County Sheriffs Department had been in the area of the crime and found some clothing in a dumpster. At the time, the police decided that it was not necessary to tag or collect the clothing. *Id.* 126, 130-32. Officer Chylinski was placed under oath and testified that he recovered a bike, a black hat, a black hooded sweatshirt and black jeans fitting the description given out on a "be on the lookout" notice in the vicinity where co-defendant Morris was believed to have fled. *Id.* 133-34. A K-9 unit was brought in, but the police dog "did not hit" on the clothing or the bike, so the clothing was left behind. *Id.* 135. No police report was made regarding the clothing. *Id.* 136-37.

Finally, with respect to the supplemental police reports, during cross-examination of Michigan State Trooper Trammel, defense counsel identified a three page supplemental report that Trooper Trammel brought with him to court. Trial Tr. 129, Jan. 20, 2004. The prosecutor explained that the report had been taken into evidence as part of an internal Michigan State Police investigation. *Id.* 132. The prosecutor was unaware that the supplemental report had not been included in the discovery materials that had been turned over from the Michigan State Police. When he became aware of the existence of a supplemental report, the prosecutor directed the police officer in charge to fax a copy to defense counsel. *Id.* 136. The judge gave defense counsel time to review

the supplemental report and adjourned trial until the next day. *Id.* 134-35. Defense counsel continued with his cross-examination of Trooper Trammel the next day and did not use or refer to the three-page supplemental report, except for a brief question about whether it was noted in "his report" that his video equipment was not working in his car during the police chase. Trial Tr. 28-45, Jan. 21, 2004.

Prior to Petitioner testifying, the trial court ruled that the prosecution could not introduce as rebuttal evidence any evidence which had not been provided in a timely fashion to defense counsel. Trial Tr. 81-82, Jan. 22, 2004.

Subsequent to being convicted, Petitioner filed a motion for new trial based on the alleged discovery violations, which he claimed prevented his attorney from preparing an adequate defense. The motion for a new trial was denied by the trial court on May 9, 2005. In denying the motion, the trial court judge determined that there had been no miscarriage of justice because every time that an issue arose, defense counsel was provided adequate time to review the materials before the proceedings continued. Hr'g Tr. 8-9, May 9, 2005.

To the extent that Petitioner claims that the prosecutor violated state discovery rules, he is not entitled to habeas relief. "It is well settled that there is no general constitutional right to discovery in a criminal case." *Stadler v. Curtin*, 682 F. Supp. 2d 807, 818 (E.D. Mich. 2010) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977), and *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988)). Therefore, a claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002); *Friday v. Straub*, 175 F. Supp. 2d 933, 940 (E.D. Mich. 2001).

To the extent that Petitioner contends that violations of the discovery order violated his due

process rights, such a contention has no merit in this case. Suppression by the prosecution of evidence favorable to the defendant and requested by the defendant violates due process only where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). There are three components of a *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Petitioner cannot demonstrate *Brady* violations for several reasons. First, all of the evidence was disclosed to Petitioner during trial. *Brady* generally does not apply to the delayed disclosure of exculpatory information, only to a complete failure by the prosecutor to disclose such information. *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (citations omitted). If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant is prejudiced by the timing of the disclosure. *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986). The Sixth Circuit Court of Appeals has noted that "the Supreme Court rejected the claim that the duty to disclose hinges on the usefulness of the material to pretrial preparation. Such a standard would 'necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense.' " *United States v. Bencs*, 28 F.3d 555, 560 n.5 (6th Cir. 1994) (quoting *United States v. Agurs*, 427 U.S. 97, 112 n. 20 (1976)).

Moreover, the mere fact that the defense theory may have been undermined by this new evidence does not entitle Petitioner to relief. "There is no rule that evidence must be excluded or

a mistrial granted on the basis that a defendant had committed himself to a theory which was undermined by new evidence." *United States v. Atisha*, 804 F.2d 920, 925 (6th Cir. 1986). "There is always a possibility that new evidence will be discovered, even if the defense was structured around assurances made by the government." *Id.* In the present case, any claim that the late disclosure of discovery materials precluded defense counsel from adequate trial preparation is non-cognizable pursuant to *Agurs*. *See Burns v. Lafler*, 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004) (citing *Bencs*, 28 F. 3d at 561).

In addition, Petitioner has not offered any evidence or argument to demonstrate that any of this evidence contained exculpatory material. The burden is on a habeas petitioner to prove that evidence that is required to be disclosed to him under *Brady* was not disclosed to him. *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998). Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *Burns*, 328 F. Supp. 2d at 724. "[M]ere speculation that a government file may contain Brady material is not sufficient" to prove a due-process violation. *United States v. Driscoll*, 970 F.2d 1472, 1482 (6th Cir.1992), abrogated on other grounds by *Hampton v. United States*, 191 F.3d 695 (6th Cir. 1999). Petitioner has not demonstrated that any of the highlighted evidence exculpated him of the crimes for which he was convicted. Petitioner is therefore not entitled to habeas relief on his *Brady* claims.

Petitioner's related claim that the late disclosure of this evidence prevented his attorney from presenting an adequate defense theory to the jury must be rejected, because Petitioner has not demonstrated how the late disclosure of this information by the prosecutor prevented counsel from providing effective representation. *See United States v. Rivera Calderon*, 578 F.3d 78, 93 (1st Cir. 2009), cert. denied, - - - U.S. - - - , 130 S. Ct. 1104 (2010). To establish a *Brady* violation based on

a prosecutor's delayed disclosure of material evidence, a "defendant must show that learning the information altered the subsequent defense strategy, and [that] given a more timeous disclosure, a more effective strategy would likely have resulted." *See United States v. Lemmerer*, 277 F.3d 579, 588 (1st Cir. 2002) (quoting *United States v. Devin*, 918 F.2d 280, 290 (1st Cir. 1990)). A defendant "cannot rely on wholly conclusory assertions but must bear the burden of producing, at the very least, a *prima facie* showing of a plausible strategic option which the delay foreclosed." *Devin*, 918 F.2d at 290.

In the present case, Petitioner is unable to demonstrate that he was prejudiced by the late disclosure of this information because he consistently pursued the same defense theory both before and after this evidence was provided to counsel. *See United States v. Josleyn*, 99 F.3d 1182, 1196 (1st Cir. 1996). Indeed, Petitioner's counsel repeatedly argued to the jury in his closing argument that the prosecution had failed to produce any witnesses to corroborate James Bonner's testimony about the crime, the 911 tape to verify that a call had been made, and any evidence to corroborate that Petitioner had confessed to the police. *See* Trial Tr. 142, 146-7, 149-52, 161-65, Jan. 22, 2004. Counsel pursued the same theory in closing argument that he had presented in his opening statement, namely that Petitioner was guilty only of fleeing and eluding and not any of the other charges. *Id.* 140-84. Moreover, because Petitioner has not demonstrated the existence of a more effective trial stategy had this evidence been disclosed to him earlier, he has not demonstrated that he was prejudiced by the late disclosure of this evidence. Because Petitioner's defense was not prejudiced by the late disclosure of this evidence, Petitioner is not entitled to habeas relief on his claims.

### III

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability

must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Here, Petitioner has not made a substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Furthermore, Petitioner will be denied leave to proceed in forma pauperis on appeal as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus [Dkt # 1] is **DENIED**.

It is further **ORDERED** that Petitioner is **DENIED** a certificate of appealability and leave to proceed in forma pauperis on appeal.

                                                   s/Thomas L. Ludington
                                                   THOMAS L. LUDINGTON
                                                   United States District Judge

Dated: July 13, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 13, 2010.

        s/Tracy A. Jacobs
        TRACY A. JACOBS